STATE *ex rel.* MATTHEW SMITH, Respondent, v. J. C. ROEVER *et al.*, Appellants.

St. Louis Court of Appeals, December 5, 1893.

1. **Chattel Mortgages:** EFFECT OF POWER OF SALE ON PART OF MORTGAGOR. To render a chattel mortgage constructively fraudulent, a power of sale or substitution on the part of the mortgagor must be reserved at the time of the execution of the mortgage; if conferred subsequently thereto, it will not have that effect.

2. ———: CONSTRUCTIVE FRAUD: EFFECT OF ACTUAL DELIVERY OF CHATTELS TO MORTGAGEE. A chattel mortgage which is only constructively fraudulent is purged of the fraud, if the mortgagee rightfully takes possession of the mortgaged property prior to any levy on it under process against the mortgagor.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Henry B. Davis* for appellants.

Appellants' first and second instructions should have been given. The assent by Smith to the sale by O'Brien of the eight cows and one horse, not with the purpose of turning over the proceeds to Smith on account of his debt, but to use them to purchase other stock to be the property of the mortgagor, subject to the mortgage, and that the mortgagor should exercise the power of disposition of the property, had the same effect in showing the intention of the parties, as if such a provision had been incorporated in the deed originally. *Thompson v. Foerstel,* 10 Mo. App. 290; *Hepburn v. Mueller,* 10 Mo. App. 87; *State v. Jacob,* 2 Mo. App. 297; *Eby v. Watkins,* 39 Mo. 27; *Bullene v. Barrett,* 87 Mo. 185.

*John P. Leahy* for respondent.

BIGGS, J.—This is an action on an indemnifying bond, in which the relator recovered a judgment for $179.35. There is no conflict in the evidence touching the following facts. One the first day of July, 1892, one Thomas O'Brien was indebted to the relator in the sum of $471, for which on that day he executed his promissory note to the relator, due six months after date, with six per cent. interest from date. To secure this note O'Brien, on the same day, executed a chattel mortgage on certain milch cows, horses and a wagon, which mortgage contained the usual covenants, that

O'Brien should remain in possession of the property until the maturity of the note, unless he attempted to remove or sell the property, or unless there was an unreasonable depreciation in its value, in which cases the relator was authorized to take possession. The mortgage was filed for record on July 15, 1892. A few days after the last mentioned date O'Brien, who was at the time engaged in running a dairy, sold some of the cows which were not giving milk and also a horse embraced in the mortgage. He pocketed the proceeds and absconded. The relator admitted that he consented to this sale upon the promise that O'Brien would either pay to him the proceeds, or invest the money in cows that were giving milk. O'Brien left no one in charge of his property, and, as there was nothing for the stock to eat, and O'Brien's whereabouts were unknown to the relator, the latter took possession of the property under his mortgage. Afterwards, on the first day of August, 1892, the defendants, Roever and Storbeck, sued O'Brien by attachment, and the constable under their orders seized two of the horses covered by the mortgage. At the time of the levy one of the horses was in the actual possession of the relator, and the other was in the possession of a third party, to whom the relator had delivered it on trial with a view of its sale. Thereupon the relator gave the constable notice of his claim to the horses, and the defendants executed the bond in suit.

The answer was to the effect that the mortgage was constructively fraudulent as to the creditors of O'Brien, and also that it was executed for the purpose of hindering, defrauding and delaying them in the collection of their debts.

The defendants asked, and the court refused to give, the following instructions, of which complaint is now made.

"1. The court declares the law to be that, if O'Brien with the consent of Smith, the plaintiff herein, sold any of the property mentioned in the mortgage read in evidence, and did not or was not to account to Smith for the proceeds thereof, then the jury will find for the defendants, notwithstanding the jury may further find that said O'Brien agreed with Smith that new property would be bought with the proceeds and that said new property would be covered by the mortgage.

"2. The court declares the law to be that, if the relator Smith, the plaintiff herein, agreed with O'Brien that any of the property covered by the mortgage should be sold by O'Brien, and that the money so obtained was to go to the purchase of new property which should be covered by the mortgage, then the jury will find for the defendants."

There was no evidence tending to prove any actual fraud as to the relator's debt, nor as to the execution of the mortgage, so that that view of the case may be put aside.

It is urged that, under the decision of the Kansas City Court of Appeals, in the case of *Smith v. Ham*, 51 Mo. App. 437, the instructions of the defendants ought to have been given. The decision referred to seems to hold that when, subsequently to the execution and delivery of the mortgage, the mortgagor with the consent of the mortgagee sells the mortgaged property or substitutes other property in its place, the court should peremptorily instruct the jury that the mortgage was constructively fraudulent as to the other creditors of the mortgagor. We can not concur in that view of the law. We are of the opinion that, to render a chattel mortgage constructively fraudulent, the right of the mortgagor to sell or substitute other property must have entered into the original agreement. If extrinsic evidence is relied on to show such an understanding,

subsequent sales or the substitution of other property by the mortgagor with the knowledge and consent of the mortgagee would only be evidence to be considered by the jury in determining whether the right of sale or of substitution was reserved to the mortgagor at the time the mortgage was executed. *Jennings v. Sparkman,* 48 Mo. App. 246; *Bullene v. Barrett,* 87 Mo. 186.

However, under no view of the law would the court have been authorized to give the instructions which the defendants asked, for the reason that all of the evidence tended to show that, at the time of the levy of the writ of attachment, the relator was rightfully in possession of the property as mortgagee. The adjudicated cases in this state hold that a mortgage which is only constructively fraudulent is purged of the fraud, if the mortgagee prior to the seizure by the creditor has rightfully taken possession of the property. *Nash v Norment,* 5 Mo. App. 545; *Greeley v. Reading,* 74 Mo. 309; *Dobyns v. Meyer,* 95 Mo. 132; *Manhattan Brass Co. v. Webster Co.,* 37 Mo. App. 145; *Joseph, Nelke, & Co. v. Boldridge,* 43 Mo. App. 333; *Koppelman Furniture Co. v. Fricke,* 39 Mo. App. 146.

The objection, that the judgment is excessive, was not urged in the motion for new trial. Although the point is not properly before us, we have looked into the evidence and found that the judgment is less than the balance due on the relator's demand, and it is within the limits of the relator's evidence as to the value of the horses.

Neither has the defendant any room to complain of the relator's instructions. The one as to the measure of damages is faulty, in that it fails to authorize the recovery of interest on the damages assessed. This error was against the relator. The other instructions stated correctly certain propositions of law which may

not have been necessary, but they were certainly not prejudicial.

With the concurrence of the other judges the judgment of the circuit court will be affirmed. It is so ordered.